UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

POWERVIP, INC. and
POWERVIP SA,

    Plaintiffs/Counter-Defendants,

v.

STATIC CONTROL COMPONENTS, INC.,
INDUSTRIAL ENGINEERING &
DEVELOPMENT, INC., and INNOVATIVE
CARTRIDGE TECHNOLOGIES, INC.,

    Defendants/Counter-Plaintiffs/Third-
    Party Plaintiffs,

v.

SOLUCIONES AVANZADAS S.A.,

    Third-Party Defendant.
_____/

Case No. 1:08-CV-382

HON. GORDON J. QUIST

## MEMORANDUM

In accordance with this Court's prior orders, the parties have submitted cross-briefs regarding whether collateral estoppel binds them to the *Markman* claim construction order recently rendered by the United States District Court for the Middle District of North Carolina ("MDNC") in a ongoing case involving the same patents at issue here. For the reasons set forth below, the Court finds that it does not.

### I. Background

**A.    The Present Litigation**

The Plaintiffs/Counter-Defendants in this case are Powervip, Inc. ("PVI") and Powervip SA ("PVSA"). PVSA is a foreign corporation, located in Uruguay, of which Jorge Fernandez is the

sole owner and president. (Fernandez Dep. at 10, Defs.' Collateral Estoppel Br. Ex. D.) PVSA sells chips for use in replacement, remanufactured, or aftermarket laser toner cartridges. PVI is an authorized distributor and seller of PVSA chips in the United States. (Compl. ¶¶19-20). Although PVSA alleges in the complaint that it manufacturers the chips it sells, Mr. Fernandez admits in his deposition that PVSA operates out of a P.O. Box in Uruguay, has no manufacturing facilities, and has but one full-time employee - Mr. Fernandez. (Fernandez Dep. at 22-23.) Instead, it appears that the chips sold and distributed by PVI and PVSA are actually manufactured by the Third-Party Defendant, Soluciones Avanzadas SA ("SASA"), a foreign corporation located in Argentina, of which Mr. Fernandez is also president and a part-owner. (*Id.* at 25, 59, 65, 69; SASA's Collateral Estoppel Br. at 3.)

The Defendants/Counter-Plaintiffs/Third-Party Plaintiffs are Static Control Components, Inc. ("Static"), Industrial Engineering & Development, Inc. ("IED"), and Innovative Cartridge Technologies, Inc. ("ICT") (hereinafter collectively referred to as "Defendants"). Static, a North Carolina manufacturer and seller of chips for aftermarket laser toner cartridges, is the owner by assignment of United States Patent Nos. 7,088,928 B2 (the "'928 patent") and 7,254,346 B2 (the "'346 patent"). ICT, a Florida manufacturer and seller of chips for aftermarket laser toner cartridges, is the owner by assignment of United States Patent Nos. 7,187,874 B1 (the "'874 patent"), 7,286,774 B1(the "'774 patent"), and 7,221,886 B1 (the "'886 patent"). ICT licenses its patents to IED, a sister company located in Florida.

On April 25, 2008, PVI and PVSA sued Defendants, seeking a declaratory judgment that certain products sold by PVI and PVSA do not infringe Defendants' '928, '346, '874, '774, and '886 patents and that the patents are invalid. On February 9, 2009, Defendants filed their answer, counterclaims against PVI and PVSA, and a third-party complaint, adding SASA to the case.

**B.     The MDNC Litigation**

On February 14, 2008, two months before the present litigation began, Static and ICT initiated the MDNC litigation by filing a complaint against Future Graphics, Inc., a customer of PVSA, alleging infringement of the '928, '346, '874, and '774 patents.  (MDNC Compl., Defs.' Collateral Estoppel Br. Ex. B.)  Future Graphics, Inc. answered the complaint and raised a number of counterclaims, including one for a declaratory judgment of non-infringement and invalidity as to the same four patents, as well as to the fifth patent at issue in this case, the '866 patent.  (MDNC Answer and Counterclaims, *Id.* Ex. C.)  Thus, all five patents at issue in this case are also at issue in the MDNC case.  The MDNC case is ongoing and no final judgment has been entered.

**1.  Relationship between PVSA, SASA and the MDNC defendants.**

Although PVSA and SASA are not parties to the MDNC litigation, they do have some connection with the defendant in that case, Future Graphics, Inc.  First, Future Graphics, Inc. purchased the allegedly infringing chips from PVSA, which, as set forth above, were likely manufactured by SASA.  Future Graphics, Inc. also purchased allegedly infringing chips from a Korean company, Daewon.  Second, on November 14, 2009, PVSA and Future Graphics Inc. entered into a "Common Interest and Information Sharing Agreement" under which they agreed to share information concerning matters of "common interest" and relating to legal opinions pertaining to the non-infringement and/or infringement of a number of patents, including the '928 and '346 patents.  (*Id.* Ex. F.)  Third, after Static and ICT sued Future Graphics, Inc. in the MDNC litigation, Future Graphics, Inc. and PVSA entered into an Indemnity and Cost Sharing Agreement (the "Indemnity Agreement"), under which PVSA agreed to defend and indemnify Future Graphics, Inc. (and its successor company, Value and Quality Ink Jets, LLC) in relation to the MDNC litigation, although limited to the claims involving chips purchased from PVSA and not those involving chips

3

purchased from Daewon. (*Id.* Ex. I.) Under the terms of the Indemnity Agreement, upon its execution, PVSA "shall assume the defense of and control the handling of any of the patent infringement claims" pertaining to the chips purchased from PVSA "with counsel approved by" PVSA. (*Id.*) The same attorney representing PVI and PVSA in the present litigation, Joseph Burgess, represents Future Graphics, Inc. in the MDNC litigation. Moreover, until March 28, 2011, Mr. Burgess also represented SASA.

### 2.  The MDNC *Markman* Order and Collateral Estoppel Briefing

By Order dated May 12, 2010, and subsequently amended on June 22, 2010, this Court ordered the parties to submit cross-briefs within 14 days of the issuance of the *Markman* claim construction order in the MDNC action. The claim construction order was issued February 23, 2011, construing the following terms: "determining" ('928 and '346 patent); "predetermined memory location" ('928 patent); "signal receiving means," "database" and "printer family" ('874 patent); and "lock out algorithm," "processor command algorithm" and "message authentication code" ('774 patent). (Defs.' Br. Ex. A.) Thereafter, this Court extended the deadline for filing collateral estoppel briefs to April 18, 2011. All briefs were timely submitted.

## II. Analysis

In patent infringement cases, regional circuit law applies to the issue of collateral estoppel. *RF Del., Inc. v. Pac. Keystone Techs., Inc.*, 326 F.3d 1255, 1261 (Fed. Cir. 2003). In the Sixth Circuit, collateral estoppel applies when:

> (1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation;
>
> (2) the issue was actually litigated and decided in the prior action;
>
> (3) the resolution of the issue in the prior litigation was necessary and essential to a final judgment on the merits;

> (4) the party to be estopped was a party to the prior litigation (or in privity with such party); and
>
> (5) the party to be estopped had a full and fair opportunity to litigate the issue.

See *Wolfe v. Perry*, 412 F.3d 707, 716 (6th Cir. 2005) (quoting *Santana-Albarran v. Ashcroft*, 393 F.3d 699, 704 (6th Cir. 2005)); *Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 590 (6th Cir. 2009) (stressing that the "prior proceeding must *have resulted in a final judgment on the merits*") (emphasis in original).

Defendants argue that collateral estoppel does apply and that all parties are bound to the claim constructions in the MDNC *Markman* order. PVI, PVSA, and SASA contend that collateral estoppel does not apply. The primary points of dispute rest on the latter three criteria: whether the MDNC claim constructions were necessary and essential to a final judgment on the merits and whether PVSI, PVSA, and SASA are in privity with Future Graphics, Inc. and had a full and fair opportunity to litigate the issues. Although Defendants have raised some valid points to support privity, including the Indemnity Agreement between PVSA and Future Graphics, Inc. and that due to Mr. Fernandez's ownership and involvement in both PVSA and SASA, the two companies are essentially alter-egos whose interests are completely aligned, the Court need not decide whether privity exists. Instead, for the reasons set forth below, the Court concludes that the MDNC *Markman* ruling was not a final judgment on the merits for purposes of collateral estoppel.

Defendants assert that the MDNC *Markman* order constitutes a final determination on the claim construction issue, and therefore, collateral estoppel applies. PVI, PVSA, and SASA argue that there has been no final judgment on infringement or invalidity to which the claim constructions were "necessary and essential" and that the claim construction order itself is not a final judgment to which collateral estoppel could apply because the order may be altered any time prior to, during, or after the trial, which is yet to even be scheduled.

5

Although none of the parties say as much, there is an ongoing debate as to the preclusive effects of a *Markman* ruling. With little guidance from the Federal Circuit on the issue, district courts have split on whether a *Markman* claim construction ruling has preclusive effects in subsequent litigation involving the same patent, especially where the prior litigation settled before a final judgment was entered, the ruling has otherwise yet to be applied in a final judgment regarding infringement or validity, or where the ruling has not undergone Federal Circuit review. *E.g.*, *compare Edberg v. CPI – The Alternative Supplier, Inc.*, 156 F. Supp. 2d 190, 194-196 (D. Conn. 2001) (applying collateral estoppel to prevent the patentee from relitigating previously constructed claims where the prior case settled following the *Markman* hearing and before trial), *with Lectrolarm Custom Servs., Inc. v. Vicon Indus., Inc.*, No. 03-2330 MA/A, 2005 WL 2177000, at *3 (W.D. Tenn. Sept. 2, 2005) (explaining that because the parties settled the prior litigation after the district court entered its *Markman* order, the order was never reviewed by the Federal Circuit, and, therefore "cannot be viewed as a final order for purposes of collateral estoppel") and *Rambus Inc. v. Hynix Semiconductor Inc.*, 569 F. Supp. 2d 946, 968 (N.D. Cal. 2008) (refusing to grant a preclusive effect to a claim construction order in an earlier proceeding for which a final judgment was yet to be entered). Two of the earliest and most often cited district court cases on the issue are *TM Patents, L.P. v. International Business Machines Corp.*, 72 F. Supp. 2d 370 (S.D.N.Y. 1999) and *Kollmorgen Corp. v. Yaskawa Electric Corp.*, 147 F. Supp. 2d 464 (W.D. Va. 2001), which reached opposite conclusions.

In *TM Patents*, the plaintiff sued IBM in a New York federal court, alleging that IBM had infringed three of its patents. 72 F. Supp. 2d at 373-74. An earlier case, in which TM Patents had sued one of IBM's competitors in a Massachusetts federal court, had settled before the jury returned a verdict on the question of infringement, but after the court had already issued a *Markman* order

6

construing several of the claims also disputed in the New York case. *Id.* at 375. The New York court, applying the Second Circuit's standards for collateral estoppel, held that the prior *Markman* ruling was "sufficiently 'final' to merit application of collateral estoppel – even though the matter to which they were necessary was never reduced to a final judgment after verdict." *Id.* at 376-77. The court explained that "*Markman* ushered in a new regime in patent claims construction," by making claim construction a separate legal issue to be determined by the court and one which the jury is not free to override. *Id.* at 376. "It is hard to see how much more 'final' a determination can be," the court explained. *Id.*

The court rejected TM Patent's argument that collateral estoppel was inappropriate because the claim constructions had never been reviewed by a higher court, explaining that the only reason they were never reviewed was that the case had settled and that "[a] party who cuts off his right to review by settling a disputed matter cannot complain that the question was never reviewed on appeal." *Id.* at 378. Finally, the court also held that pre-*Markman* cases limiting collateral estoppel to matters that were essential to a final judgment of validity or infringement, *see e.g.*, *A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 704 (Fed. Cir. 1983) ("[W]e hold that judicial statements regarding the scope of patent claims are entitled to collateral estoppel effect in a subsequent infringement suit only to the extent that determination of scope was essential to a final judgment on the question of validity or infringement."), are "inapplicable in the post-*Markman* era, at least when the district court holds a special pre-trial hearing." *TM Patents*, 72 F. Supp. 2d at 378.

In *Kollmorgen*, a Virginia district court came to the opposite conclusion on nearly identical facts. As in *TM Patents*, the question was whether the plaintiff-patentee was bound by a claim construction order issued in a previous case against a different defendant in which the parties settled after the *Markman* ruling, but before the jury returned a verdict on the ultimate issue of

7

infringement. *Kollmorgen*, 147 F. Supp. 2d at 466. The Virginia court held that collateral estoppel did not apply because the *Markman* order was not essential to a final judgment. *Id.* at 467. The court explained that the *TM Patents* court had "incorrectly interpret[ed] *Markman*'s ruling as nullifying pre-existing Federal Circuit analysis regarding collateral estoppel" because "[a]lthough *Markman* did empower the judge, rather than the jury, to construe the patent scope and claim at issue, it did not single-handedly redefine 'finality' for collateral estoppel purposes." 147 F. Supp. 2d at 467. Even post-*Markman*, the court concluded, Federal Circuit guidance requires that, for collateral estoppel to apply, the previous court's claim construction must have been "essential to a final judgment on the question of the patent's infringement." *Id.* at 469. Because the previous court had "never reached a decision as to the patent infringement claim, the order necessarily could not prove essential to a non-existent final judgment." *Id.* at 479.

In addition, the *Kollmorgen* court noted that the plaintiff had no opportunity to have the court's construction reviewed. Because the parties settled, the Federal Circuit lacked jurisdiction to review the *Markman* order absent certification for interlocutory appeal, but even if the district court judge had so certified, "the Federal Circuit consistently declines to review patent claim interpretations. *Id.* at 467. Given this absence of review, combined with the fact that approximately 40 percent of claims constructions that are actually reviewed by the Federal Circuit are changed or overturned, the court concluded that granting the unreviewed order preclusive effect would be inappropriate. *Id.* at 467-68. Although *Markman*'s goal was to promote uniformity in the meaning given to a patent claim, that goal "presupposes that the court's construction of the patent is correct." *Id.* at 468. "*Markman* supports the promotion of uniformity, yet it does not stand for blanketed adoption of patent constructions without first undergoing the Federal Circuit's rigorous review." *Id.*

8

Finally, the *Kollmorgen* court further pointed out that granting preclusive effect to claim construction orders would have a chilling effect on settlements: "Why would a party settle a patent dispute, after a damaging *Markman* Order, with the knowledge that it cannot appeal the district court's patent claim construction" and that the ruling will have a preclusive effect on other potential patent actions? *Id.* Given the percentage of *Markman* orders that are reversed by the Federal Circuit, "logic dictates that for these claim constructions to have preclusive effect, the litigants must first have an opportunity to seek Federal Circuit Review." *Id.*

In 2003, the Federal Circuit had the opportunity to address whether *Markman* changed the application of collateral estoppel in *RF Delaware, Inc. v. Pacific Keystone Technologies, Inc.*, 326 F.3d 1255 (2003), yet the decision sheds little light on the issue. As in *TM Patents* and *Kollmorgen*, in *RF Delaware* a previous court had issued a claim construction ruling, although as part of partial summary judgment orders and without holding a *Markman* hearing, and the parties settled before a final judgment on the issue of infringement was reached. *Id.* at 1261-62. Applying the Eleventh Circuit Standard for collateral estoppel, the Court held that "collateral estoppel does not apply in the present case because no judgment, much less final judgment, was ever entered in the" prior case. *Id.* at 1261. The Court explained that the orders granting partial summary judgment "were not sufficiently firm to have preclusive effect." *Id.* at 1262. No evidentiary hearing was conducted to construe the claims, and thus, it was questionable whether the parties had been "fully heard." *Id.* Moreover, the prior court neither put the parties on notice that the orders may have a preclusive effect nor entered a final order approving the settlement. *Id.* Thus, the plaintiff-patentee was not precluded from arguing for a different claim construction in the subsequent litigation. *Id.*

The Court finds that *Kollmorgen* has the better side of the argument. Given that in construing patent claims judges often must tread on alien ground, addressing scientific and

9

technological concepts that even experts in the field my disagree on, and that district court judges' interpretations are overturned nearly half of the time, the Court questions the utility of applying issue preclusion to a *Markman* order. *See Kim v. The Earthgrains Co.*, No. 01 C 3895, 2005 WL 66071, at *10-11 (N.D. Ill. Jan. 11, 2005) (noting the same problems and concluding that the best approach is to view the previous claim construction as instructive, but stopping short of according it a preclusive effect).

This conclusion is buttressed by the fact that unlike *RF Delaware*, *TM Patents*, and *Killmorgen*, which all addressed the preclusive effect of *Markman* rulings where the prior case terminated due to settlement before any ruling on infringement or invalidity had been made, the MDNC litigation is ongoing. Thus, the MDNC court may still revisit or alter its interpretation of the claim terms as the case develops. *Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1316 (Fed. Cir. 2010) ("[D]istrict courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.") (quoting *Pfizer, Inc. v. Teva Pharm., USA, Inc.*, 429 F.3d 1364, 1377 (Fed. Cir. 2005)). The parties cite no cases and the Court is aware of none, finding that a *Markman* ruling is sufficiently "final" for collateral estoppel purposes where, as here, the action in which it was issued is still ongoing and the constructions may, therefore, still be changed. *See Fitzgibbon v. Martin Cnty. Coal Corp.*, No. 05-36, 2007 WL 1231509, at *7 (E.D. Ky. Apr. 25, 2007) (noting the same, but ultimately declining to address the issue because the parties had failed to satisfy other elements of collateral estoppel as well); *cf. Rambus Inc.*, 569 F. Supp. 2d at 968 (declining to grant preclusive effects to a previous claim construction order where there was yet to be a final judgment in the earlier proceeding, explaining that, the lack of a final judgment prevented the parties from obtaining appellate review of the claim constructions and that the inability to obtain appellate review prevents application of collateral estoppel).

Instead, the Court finds, as have several other district courts faced with the issue, that while not entitled to a preclusive effect, the MDNC *Markman* order is instructive and may properly be considered by the Court in rendering its own construction of the claims at issue. *See e.g.*, *Parker-Hannifin Corp. v. Baldwin Filters, Inc.*, 724 F. Supp. 2d 810, 815-16 (N.D. Ohio 2010) (holding that the prior order would receive "deferential treatment unless clearly erroneous," but was not entitled to a preclusive effect); *Kim*, 2005 WL 66071, at *11 ("While stopping short of according a preclusive effect to Judge Hart's claim construction, the court will bear his interpretations in mind as instructive while rendering its own construction of the claims at issue here."); *Nilssen v. Motorola, Inc.*, 80 F. Supp. 2d 921, 924 n. 4 (N.D. Ill. 2000) ("[W]hile the court is respectful of Judge Kennelly's ruling construing some of the claims in those patents . . . and of the 'importance of uniformity in the treatment of a given patent,' it is not compelled to reach the same conclusions." (internal citation omitted)); *Tex. Instruments, Inc. v. Linear Techs. Corp.*, 182 F. Supp. 2d 580, 589 (E.D. Tex. 2002) (finding that a court should be respectful of and may defer to a prior construction, but that it is not bound by it).

## CONCLUSION

For the reasons set forth above, the MDNC *Markman* order, issued February 23, 2011, while instructive, is not entitled to a preclusive effect.


Dated: July 6, 2011                              /s/ Gordon J. Quist
                                              GORDON J. QUIST
                                        UNITED STATES DISTRICT JUDGE